# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| APRIL STEWART, | Case No. 1:25-cv-01182 |
| Plaintiff, | Judge J. Philip Calabrese |
| v. | Magistrate Judge |
| | James E. Grimes, Jr. |
| D&S CONSTRUCTION, INC., *et al.*, | |
| Defendants. | |

## OPINION AND ORDER

Plaintiff April Stewart brings this action alleging violations of Title VII of the Civil Rights Act of 1964 and Ohio law against Defendants D&S Construction, Inc., DiGioia Suburban Excavating, LLC, and Shawn Monnolly.  Mr. Monnolly moves to dismiss the State law claims against him.  The Ohio Employment Lawyers Association moves for leave to file an *amicus curiae* memorandum in opposition.  For the reasons that follow, the Court **GRANTS** the Ohio Employment Lawyers Association's motion for leave to file a memorandum as *amicus curia* and **DENIES** Defendant's motion.

### STATEMENT OF FACTS

On Defendant's motion to dismiss, the complaint alleges the following facts, which the Court accepts as true and construes in the light most favorable to Plaintiff, as it must in the present procedural posture.

A. Ms. Stewart's Employment

On January 2, 2023, Ms. Stewart began working as a controller for D&S Construction, Inc. and DiGioia Suburban Excavating, LLC. (ECF No. 11, ¶ 17, PageID #83.) During Ms. Stewart's employment, Shawn Monnolly was a co-owner of DiGioia Suburban Excavating and had the authority to hire, fire, and discipline the company's employees. (*Id.*, ¶¶ 8–9, PageID #82.)

A.1. Alleged Harassment from Co-workers

From the beginning of her employment, two of Ms. Stewart's co-workers allegedly subjected her to inappropriate conduct and behavior that Ms. Stewart described as degrading. (*Id.*, ¶ 19, PageID #83–84.) For example, one co-worker allegedly came into her office and discussed placing large genitalia on her desk as a "welcome gift." (*Id.*, ¶ 20, PageID #84.) Another co-worker allegedly entered Ms. Stewart's office and asked if she was single, told her about an alleged affair at the company, and told her that "the men at the company could get away with anything they wanted." (*Id.*, ¶ 25, PageID #84.)

Ms. Stewart met with company leadership, including Mr. Monnolly, to inform them of these interactions and other concerns that she had about the office environment. (*Id.*, ¶ 28, PageID #84.) Mr. Monnolly allegedly became visibly upset during the meeting, blamed Ms. Stewart for the interactions with her co-workers, and forced her to leave the room. (*Id.*, ¶¶ 30–32, PageID #84.) Then, Mr. Monnolly went to Ms. Stewart's office and told her that he was disappointed with her. (*Id.*, ¶ 33, PageID #85.) Ms. Stewart told Mr. Monnolly that her co-workers would not speak to her, men at the company did not respect her, and she was not able to do her job as a

result. (*Id.*, ¶ 34, PageID #85.) Mr. Monnolly allegedly left Ms. Stewart's office without saying anything and did not speak to her for weeks. (*Id.*, ¶ 35, PageID #85.)

In March 2023, a co-worker allegedly asked for Ms. Stewart's phone number so that she could join him and his wife for sexual activity. (*Id.*, ¶¶ 36–37, PageID #85.) Ms. Stewart reported this conversation to co-owners Nick DiGioia, Sr. and Jessica DiGioia, who allegedly laughed at her and told her that she was "a big girl" who could "handle it." (*Id.*, ¶¶ 40–41, PageID #85.) Ms. Stewart's supervisors allegedly refused to investigate her claims of sexual harassment. (*Id.*, ¶ 42, PageID #85.) Mr. Monnolly was made aware of Ms. Stewart's complaints but allegedly refused to investigate. (*Id.*, ¶¶ 43–44, PageID #85.)

### A.2. Alleged Harassment toward Employees

According to Ms. Stewart, sexual comments were also made to her female staff members. (*Id.*, ¶ 45, PageID #85.) Within two days of Ms. Stewart hiring a female employee in April 2023, a co-worker allegedly wrote the employee a letter informing her that he wanted to have sexual intercourse with her and that he adored her. (*Id.*, ¶¶ 46–48, PageID #86.) Ms. Stewart's employee asked her for guidance regarding the letter, and Ms. Stewart reported the incident and provided the letter to Mr. Monnolly, Mr. DiGioia, and Ms. DiGioia. (*Id.*, ¶¶ 49–50, PageID #86.) Mr. Monnolly allegedly excused the coworker's actions and blamed them on Ms. Stewart, telling her that she "needed to handle her department better." (*Id.*, ¶¶ 51–52, PageID #86.) Mr. Monnolly was allegedly upset with Ms. Stewart for bringing the co-worker's letter to him, telling her that the company needed the co-worker and that it was hard to find employees for his role. (*Id.*, ¶¶ 53–54, PageID

#86.) Mr. Monnolly did not discipline the co-worker for his alleged conduct. (*Id.*, ¶ 56, PageID #86.) Ms. Stewart's employee quit within a week of the incident. (*Id.*, ¶ 57, PageID #86.)

### A.3. Alleged Harassment from Leadership

According to Ms. Stewart, Mr. DiGioia made sexually explicit comments to her in the workplace. (*Id.*, ¶ 59, PageID #86–87.) Mr. DiGioia allegedly told Ms. Stewart and her coworker about a previous sexual activity in which he engaged. (*Id.*, ¶ 60, PageID #87.) Also, Mr. DiGioia allegedly told Ms. Stewart that she could not wear dresses to work because he could not stop staring at her. (*Id.*, ¶ 60, PageID #87.) In addition, Mr. DiGioia allegedly commented on Ms. Stewart's weight, looks, and breasts, and discussed the size of his genitalia. (*Id.*, ¶¶ 62–63, PageID #87.) The company and Mr. Monnolly allegedly failed to investigate Ms. Stewart's complaints and took no corrective action, causing sexual comments to continue. (*Id.*, ¶¶ 64–66, PageID #87.)

### B. Ms. Stewart's Termination

On September 11, 2023, Mr. Monnolly terminated Ms. Stewart's employment from the company, telling her that the company was "making a change" that was in the company's "best interest." (*Id.*, ¶¶ 71–73, PageID #87.) According to Ms. Stewart, the company had not previously reprimanded her for performance issues. (*Id.*, ¶ 74, PageID #88.)

## STATEMENT OF THE CASE

Based on these events, Plaintiff filed this action in federal court on June 6, 2025 against D&S Construction, DiGioia Suburban Excavating, and Shawn

Monnolly. She alleges sex discrimination (Count 1), hostile work environment/harassment (Count 2), and retaliation (Count 3) against D&S Construction and DiGioia Suburban Excavating. (ECF No. 11, ¶¶ 87–110, PageID #89–91.) Further, she brings claims for aiding and abetting pursuant to Section 4112.02(J) of the Ohio Revised Code (Count 4) and retaliation pursuant to Section 4112.02(I) (Count 5) against Shawn Monnolly. (*Id.*, ¶¶ 111–31, PageID #91–93.)

On September 12, 2025, Mr. Monnolly moved to dismiss the claims against him—the claims under State law in Count 4 and Count 5—for failure to state a claim. (ECF No. 12.) In the alternative, Mr. Monnolly asked the Court to certify to the Ohio Supreme Court the question whether the Ohio Fair Employment Practices Act bars Plaintiff's claims against him. (ECF No. 12-1, PageID #101–02.) On September 25, 2025, the Ohio Employment Lawyers Association sought leave to file a memorandum of *amicus curiae* in opposition to Mr. Monnolly's motion to dismiss. (ECF No. 16.) The Court **GRANTS** that motion.

## ANALYSIS

Under Rule 12(b)(6), a court may dismiss a complaint if it fails to state a claim on which a court may grant relief. Fed. R. Civ. P. 12(b)(6). A motion under Rule 12(b)(6) tests "the plaintiff's cause of action as stated in the complaint," and is "not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958–59 (6th Cir. 2005). A complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

5

(2007)). A claim is plausible where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). To survive a motion to dismiss, a complaint must "raise a right to relief above the speculative level" into the "realm of plausible liability." *Twombly*, 550 U.S. at 555, 557 n.5.

On a motion to dismiss, the Court construes factual allegations in the light most favorable to the plaintiff, accepts them as true, and draws all reasonable inferences in the plaintiff's favor. *Wilburn v. United States*, 616 F. App'x 848, 852 (6th Cir. 2015) (citing *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). But a pleading must offer more than mere "labels and conclusions," and "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Nor is a court required to accept "[c]onclusory allegations or legal conclusions masquerading as factual allegations." *Eidson v. Tennessee Dep't of Child.'s Servs.*, 510 F.3d 631, 634 (6th Cir. 2007) (citing *Twombly*, 550 U.S. at 544).

Therefore, the Court must distinguish between "well-pled factual allegations," which must be treated as true, and "naked assertions," which need not be. *Iqbal*, 556 U.S. at 678 (citation modified); *see also, e.g.*, *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 375 (6th Cir. 2011) (determining that because some of the plaintiff's factual allegations were not well-pled, their conclusory nature disentitled them to the presumption of truth). Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79.

6

Mr. Monnolly argues that Ohio's Employment Law Uniformity Act bars Plaintiff's claims against him. (ECF No. 12-1, PageID #99–101.) In the alternative, he asks the Court to certify the question to the Ohio Supreme Court. (*Id.*, PageID #101–02.)

## I. The Employment Law Uniformity Act

Mr. Monolly argues that he cannot be held individually liable for Plaintiff's claims pursuant to Sections 4112.02(I) and (J) of the Ohio Revised Code because he was not Plaintiff's employer. (*Id.*, PageID #99–101.) Specifically, he contends that Ohio's Employment Law Uniformity Act, enacted in 2021, "changed Ohio's statutory scheme to remove individual lability for supervisors, managers, and other employees of the employer." (*Id.*, PageID #99.)

The Court begins its analysis with the statutory text. *See Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) (acknowledging that, when "the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms") (citation modified) (citation omitted). Under Ohio law, the Court first determines whether the statute is plain and unambiguous. *Jacobson v. Kaforey*, 149 Ohio St. 3d 398, 2016-Ohio-8434, 75 N.E.3d 203, ¶ 8 (quoting *State v. Hurd*, 89 Ohio St. 3d 616, 618, 734 N.E.2d 365 (2000)). If so, the Court need not apply the rules of statutory construction because such a statute is applied, not interpreted. *Pelletier v. City of Campbell*, 153 Ohio St. 3d 611, 2018- Ohio-2121, 109 N.E.3d 1210, ¶ 14. An ambiguous statute is one "capable of bearing more than one meaning."

7

*Jacobson*, 2016-Ohio-8434, at ¶ 8 (quoting *Dunbar v. State*, 136 Ohio St. 3d 181, 2013-Ohio-2163, 992 N.E.2d 1111, ¶ 16).

### I.A. Statutory Text

Section 4112.02 makes unlawful certain discriminatory employment practices. As relevant here, the statute makes it unlawful "[f]or any person to discriminate in any manner against any other person because that person" (1) "opposed any unlawful discriminatory practice defined in this section"; or (2) "made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing" as defined in other sections. Ohio Rev. Code § 4112.02(I). Plaintiff cites this subsection as the basis for her retaliation claim against Mr. Monnolly. (ECF No. 11, ¶¶ 122–30, PageID #92–93.) Further, the statute makes it unlawful "[f]or any person to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful discriminatory practice . . . ." Ohio Rev. Code § 4112.02(J). Plaintiff brings her aiding and abetting claim against Mr. Monnolly under this subsection. (ECF No. 11, ¶¶ 111–21, PageID #91–92.)

Section 4112.01(A)(24) provides:

Unlawful discriminatory practice relating to employment" means both of the following:

(a)  An unlawful discriminatory practice that is prohibited by division (A), (B), (C), (D), (E), or (F) of section 4112.02 of the Revised Code;

(b)  An unlawful discriminatory practice that is prohibited by division (I) or (J) of section 4112.02 of the Revised Code that is related to employment.

Notably, this second subsection expressly applies to the claims for retaliation and aiding and abetting that Plaintiff brings against Mr. Monnolly.

8

In April 2021, the Ohio General Assembly enacted amendments to this statutory framework in the Employment Law Uniformity Act. *See, e.g.*, Ohio Rev. Code § 4112.08. Mr. Monnolly contends that the amendment found in Section 4112.08(A) bars Plaintiff's claims against him because he was not Plaintiff's employer. (ECF No. 12-1, PageID #99–101.) But Section 4112.08(A) reads in relevant part:

> [N]o person has a cause of action or claim based on an unlawful discriminatory practice relating to *employment described in division (A)(24)(a) of section 4112.01 of the Revised Code* against a supervisor, manager, or other employee of an employer unless that supervisor, manager, or other employee is the employer.

Ohio Rev. Code § 4112.08(A) (emphasis added). In other words, the amendment only limits a cause of action or claim as described in subdivision (a) of Section 4112.01(A)(24)—*not* subdivision (b), under which Plaintiff brings her retaliation and aiding and abetting claims against Mr. Monnolly. Ohio Rev. Code § 4112.01(A)(24)(b); Ohio Rev. Code §§ 4112.02(I) & (J). Therefore, the statutory text on its face does not bar Plaintiff's claims against Mr. Monnolly, even if he was not Ms. Stewart's employer.

**I.B. Case Law**

As Plaintiff observed (ECF No. 15, PageID #146), several courts in this district have come to the same conclusion that the 2021 Employment Law Uniformity Act does not bar claims for retaliation and aiding and abetting. *See, e.g.*, *Ludlam v. Mistick Constr. Co.*, No. 1:24-cv-1757, 2025 WL 253302, at *2 (N.D. Ohio Jan. 21, 2025); *Lang v. BWXT Nuclear Operations Grp., Inc.*, No. 5:24-cv-00117, 2024 WL 1175182, at *3 (N.D. Ohio Mar. 19, 2024); *Spahija v. Rae-Ann Holdings, Inc.*,

9

No. 1:22-cv-1986, 2022 WL 17993026, at *2 (N.D. Ohio Dec. 29, 2022); *Williams v. Barton Malow Co.*, 581 F. Supp. 3d 923, 927 (N.D. Ohio 2022); *Norris v. G4S Secure Sols. (USA), Inc.*, No. 1:21-cv-1022, 2021 WL 3077502, at *2 (N.D. Ohio June 30, 2021).

Mr. Monnolly relies on *Smith v. STERIS Corp.*, No. 1:24-cv-00319, 2024 WL 1656580, at *2–6 (N.D. Ohio Apr. 17, 2024), a case which largely relied on a decision from the Southern District of Ohio to determine that Section 4112.08(A) barred claims of retaliation and aiding and abetting brought under Sections 4112.02(I) and (J). (ECF No. 12-1, PageID #99–100.) But the opinion on which the *Smith* Court relied, *Sherman v. Public Employees Retirement System*, No. 2:22-cv-04161, 2023 WL 6307632, at *11 (S.D. Ohio Sept. 28, 2023), was since modified on reconsideration. *See Sherman v. Public Emps. Ret. Sys.*, No. 2:22-cv-04161, 2024 WL 3616249, at *3 (S.D. Ohio Aug. 1, 2024). On reconsideration, the judge acknowledged that he "treated subsections § 4112.01(A)(24)(a) and (b) the same, while the statute only absolves supervisory liability for unlawful discriminatory practices identified under § 4112.01(A)(24)(a). Here, Plaintiff brought claims for violations of Ohio Rev. Code §§ 4112.02(I) and (J), which are identified under § 4112.01(A)(24)(b) and are the precise claims which numerous Ohio Courts of Appeals have held as proper." *Id.*

Since then, the same judge has issued opinions acknowledging that Ohio law permits individual liability for supervisors and managers who violate Section 4112.02(I) and (J). *See Banks v. Geodis Logistics, LLC*, No. 2:24-cv-1591, 2024 WL 4833807, at *5 (S.D. Ohio Nov. 20, 2024); *Parker v. Consolidated Coop.*, No. 2:23-cv-

10

2099, 2024 WL 4652120, at *3 (S.D. Ohio Nov. 1, 2024). Accordingly, the Court determines that the holding in *Smith* is unpersuasive because it largely relies on another court's incorrect reading of the statutory framework at issue. 2024 WL 1656580, at *2–6. The original statutory misinterpretation in *Sherman*, 2024 WL 3616249, at *3, was expressly reconsidered, and the plain language of the statute does not support dismissal of claims against individual defendants on the basis of retaliation and aiding and abetting.

Defendant argues that "Judge Nugent had occasion to consider the impact of Judge Sargus's modified ruling on his own rulings, and rejected it." (ECF No. 17, PageID #177.) But Judge Nugent's reasoning regarding Judge Sargus's opinion in *Smith* was merely that "the Court's final ruling was to dismiss Plaintiff['s] . . . claims with prejudice for want of prosecution . . . thus rendering the determinations on the Ohio Employment Law Uniformity Act's . . . amendments to Ohio's Fair Employment Practices Act non-dispositive of the case." *Smith v. STERIS Corp.*, No. 1:24-cv-00319, 2024 WL 3952632, at *2 (N.D. Ohio Aug. 27, 2024). In other words, that decision did not "reject" *Smith*'s reinterpretation of the statutory framework on reconsideration but merely determined that the language was not dispositive of the case. *Id.* That technicality does not change the fact that the original opinion in *Smith*, 2024 WL 1656580, at *2–6, relied on a misapplication of the statutory framework in *Sherman*, 2024 WL 3616249, at *3. Nor does it represent a reading of the plain text of the statute that support's Defendant's position.

11

\*   \*   \*

For these reasons, the Court determines that the 2021 Employment Law Uniformity Act does *not* bar Plaintiff's claims against Mr. Monnolly.

## II. Certification

Because the Court determines that the plain language of the exemption in Section 4112.08(A) distinguishes the discriminatory practices in Section 4112.02(A)–(F) from those in Section 4112.02(I) and (J), certification to the Ohio Supreme Court is not necessary.

## CONCLUSION

For all the foregoing reasons, the Court **GRANTS** the motion of the Ohio Employment Lawyers Association for leave to file a memorandum as *amicus curiae* (ECF No. 16) and **DENIES** Mr. Monnolly's motion to dismiss. (ECF No. 12.)

**SO ORDERED.**

Dated: October 31, 2025

J. Philip Calabrese
United States District Judge
Northern District of Ohio